OPINION OF THE COURT
Bellacosa, J.
Defendant was convicted by a jury of six counts of criminal possession of weapons and ammunition after his pretrial suppression motion was denied by the Nassau County Court. The County Court had preliminarily exercised its discretionary authority to refer the suppression matter to an authorized Judicial Hearing Officer (JHO) for the filing of a report as prescribed in CPL 255.20 (4). Defendant did not object to the use of this procedure at trial but challenged it on appeal, both facially and as applied, on State constitutional grounds only. The Appellate Division upheld the JHO referral statute while affirming the judgment of conviction. A Judge of this Court granted leave to appeal and we allowed the Attorney-General leave to intervene to support the statute’s constitutionality (Executive Law § 71). We now affirm.
CPL 255.20 (4), enacted in 1983 as part of a comprehensive package (L 1983, ch 840), provides relevantly: "Any pre-trial motion * * * may be referred by the court to a judicial hearing officer who shall entertain it in the same manner as a court. In the discharge of this responsibility, the judicial hearing officer shall have the same powers as a judge of the court making the assignment, except that the judicial hearing officer shall not determine the motion but shall file a report with the court setting forth findings of fact and conclusions of law” (CPL 255.20 [4]).
*607 Defendant argues that article VI, §§ 10 and 11 of the New York Constitution, which establishes the County Court, does not allow any part of the court’s function to be discharged by anyone but a Judge. That is defendant’s strict jurisdictional argument addressed to the competence or power to decide. Defendant also asserts a due process violation, claiming that the manner and procedure under which the pretrial suppression motion referral operates deprived him of having this part of his case actually "heard” by a Judge.
The facial attack fails because the core of the statutory authorization retains for the Trial Judge the sole authority to "determine” all issues referred to a JHO by expressly withholding from the JHO the power to "determine” anything. Thus, no unauthorized or unconstitutional diversion of the trial court’s exclusive jurisdiction and responsibility to decide is threatened. We also discern no unfairness or lapse of due process in the method prescribed for the statute’s operation” Defendant’s "as applied” prong, unlike his facial one, must be customarily preserved, and inasmuch as that prerequisite is lacking here, we cannot resolve that claim.
Defendant was arrested and charged with six counts of criminal possession of a weapon, third degree, after the police discovered a large quantity of weapons and ammunition in his home and automobile. The pretrial hearing for suppression of evidence focused on the seized contraband and defendant’s statements to the police. The JHO took testimony, filed findings of fact and conclusions of law with the County Court, and recommended denial of the suppression motion. County Court, after reviewing the report and the entire record of the hearing, adopted the JHO’s findings and recommendation and denied defendant’s motion to suppress in the court’s own order.
We start with the elementary principles that acts of the Legislature enjoy a strong presumption of constitutionality (People v Davis, 43 NY2d 17, 30) and that it possesses broad authority to adopt procedural rules for the courts (Matter of A. G. Ship Maintenance Corp. v Lezak, 69 NY2d 1, 5-6). The substantial burden of proving unconstitutionality beyond a reasonable doubt rests with a statute’s antagonist (Matter of Van Berkel v Power, 16 NY2d 37, 40).
A special committee, organized by the judicial branch itself, studied and recommended the JHO program in the early 1980’s (see, Report of Comm to Utilize Services of Retired *608 Judges, chaired by former Mayor John Lindsay, to then-Chief Judge Cooke, reprinted in the 5th Ann Rep of Chief Administrator of Courts [1983]). The Committee proposed the creation of a new title and function, that of JHOs, to be performed by former Judges. It found that former "judges, if utilized properly, could make a significant contribution toward alleviating some * * * backlog and delay” (id., at 110). One specific objective was to utilize the services of these experienced officers in expediting motion practice in criminal cases as a direct aid to Judges, freeing the Judges to conduct more trials (id., at 112-113).
The Legislature, spurred by the initiative and findings, enacted CPL 255.20 (4) as part of an integrated plan to use former Judges as Hearing Officers to expedite the disposition of cases in civil matters and in some criminal case aspects (L 1983, ch 840, §§ 2-15). In criminal matters, JHOs are authorized to hear and report on pretrial motions, as was done here, and they may also, with the parties’ consent, try issues of fact and preside at bench trials of class B and unclassified misdemeanors (CPL 350.20). Recent efforts to authorize expanded utilization have not yet been enacted (see, Ann State of Judiciary Message of Chief Judge, 1989-1990, at 33; Assembly Bill 8228-A, 1989-1990 Legislative Session, introduced at the request of the judicial branch).
As directed under chapter 840 (Judiciary Law § 854), the Chief Administrator of the Courts promulgated rules for JHO qualification and for operational procedures (see, Rules of Chief Administrator, 22 NYCRR part 122). After consultation with appropriate Administrative and Deputy Chief Administrative Judges and the Presiding Justice of the appropriate Appellate Division (22 NYCRR 122.2 [c], [d]), qualified former Judges were designated for availability and then selection by Trial Judges as needed.
CPL 255.20 (4), in authorizing a Trial Judge to select in the court’s discretion a JHO from a previously screened and authorized list to perform only the function of holding a pretrial hearing and making a report that is filed with the referring court, recognizes and preserves the trial court’s nondelegable and exclusive authority to decide the suppression motion. The court decides only after review of the report, all exhibits, motion papers, and the complete record of the hearing. The Trial Judge always keeps the plenary power to reject, accept or modify the JHO’s report in whole or in part *609 based on the court’s independent review. Significantly, the Trial Judge designates in the first instance and holds the tether on the case throughout the completion of the referral. Indeed, the statute implicitly authorizes the trial court sua sponte or on application to cancel the referral and bring the entire matter back before itself, go beyond the written record and order further proceedings such as hearing relevant witnesses for itself if deemed necessary, or even to redo the pretrial proceedings de novo (see, 1983 Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 255.20, 1990 Cum Ann Pocket Part, at 190).
Although the defendant argues that article VI, §§ 10 and 11 of the New York State Constitution prohibit referrals to JHOs to conduct suppression hearings, these sections contain no such express or implied prohibitory language. Rather, they provide essentially for the organization and jurisdiction of County Courts. CPL 255.20 (4) in no way clashes with those sections and does not undermine or diminish the court’s exclusive power to decide. By its terms, the statute preserves and reinforces it.
Defendant’s due process claim is readily answered. United States v Raddatz (447 US 667 [1980]) provides useful guidance in this regard. The Supreme Court there considered a similar Federal due process challenge to the Federal Magistrates Act (28 USC § 636 [b] [1]). The purpose and design of that statute are akin to CPL 255.20 (4), in that the Federal Magistrates Act authorizes a United States District Court to refer a suppression motion to a Magistrate, who files proposed findings of fact and recommendations with the District Court. The District Court Judge, not the Magistrate, actually decides the motion on the record developed before the Magistrate. The Supreme Court upheld the procedure, concluding that due process was satisfied even though the District Judge may not personally listen to the witnesses, since the Judge acts as the ultimate decision maker and has the discretion to accept, reject or modify the Magistrate’s proposed finding (447 US, supra, at 680-681). On the due process argument there, the Supreme Court differentiated the purposes underlying a suppression hearing from the ultimate issue of guilt or innocence, and concluded that the protections at a suppression hearing "may be less demanding and elaborate than the protections accorded the defendant at the trial itself.” (United States v Raddatz, 447 US, supra, at 679.)
*610 In the instant case, too, defendant’s right to be heard by the court, with all attendant protections and procedures, is satisfied by the terms of the statute. Indeed, defendant took advantage of his due opportunity for a hearing before the JHO, and his motion papers and arguments addressed to the pretrial record and the JHO’s findings were fully presented to the suppression court Judge, who then reviewed the entire record before making the suppression motion determination in the court’s own order. Thus, while the suppression Judge did not personally listen to the witnesses’ testimony, the court "heard” the motion in a customary juridical sense of that phrase (e.g., deciding or reviewing a matter or record on submitted papers without oral presentation). The Judge alone then denied the motion, not the JHO.
We have held that due process claims under New York’s Constitution, like those raised under the United States Constitution, require the balancing of factors — "an evaluation of the interests of the parties to the dispute, the adequacy of the contested procedures to protect those interests and the government’s stake in the outcome.” (La Rossa v Abrams, 62 NY2d 583, 588; see also, Mathews v Eldridge, 424 US 319, 334-335.) Here, defendant’s opportunity to present evidence and testimony to a neutral fact finder selected by the Judge who will decide the case and all its issues, coupled with the Trial Judge’s de novo review powers and options, provides process that is due. The investigative and empirical record also manifest a substantial State interest in the objective of CPL 255.20 (4) to lessen delay, a recognized evil to the fair administration of the criminal justice system. The discretionary statutory procedure helps in this regard by supplying the court system with the excellent resource of experienced former Judges who may hear, but not determine, time-consuming pretrial motions as judicial officers to sitting Judges so that the latter can concentrate efficiently on trying cases. Thus, we hold that CPL 255.20 (4) is facially valid; defendant’s reviewable arguments fail; and his burden has not been satisfied.
While we cannot decide the "as applied” constitutionality because defendant failed to object to the qualifications of the specific JHO to whom this pretrial matter was referred, we note that the requirements for JHO designation were recently strengthened (Rules of Chief Administrator of Courts, 22 NYCRR 122.1 [a]). Effective January 1, 1991, a retired Judge must have served at least a year as a Judge of the *611 Unified Court System in a court other than a Town or Village Court to qualify for designation as a JHO.
The views expressed in the dissenting opinion do not warrant direct response other than the analysis and authorities already supplied by the opinion of the Court to decide this case.
Accordingly, the order of the Appellate Division should be affirmed.