[912 NE2d 1044, 884 NYS2d 665]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WAYNE DAVIS, Appellant.

Argued April 29, 2009; decided June 11, 2009

## POINTS OF COUNSEL

*Legal Aid Society, Criminal Appeals Bureau,* New York City (*Amy Donner* and *Steven Banks* of counsel), for appellant. I. Criminal Procedure Law § 350.20 violates New York State Constitution, article VI, § 15 (a)'s requirement that the judges of the citywide court of criminal jurisdiction preside over criminal trials, by delegating judges' exclusive jurisdiction over criminal matters to officers who are not judges, and violates the Due Process Clauses of the Federal and State Constitutions because the final decision on the defendant's guilt or innocence is made by a judicial hearing officer rather than a judge. (*People v Scalza,* 76 NY2d 604; *United States v Raddatz,* 447 US 667; *LaRossa, Axenfeld & Mitchell v Abrams,* 62 NY2d 583; *Mathews v Eldridge,* 424 US 319; *People v Flynn,* 79 NY2d 879; *People v Burwell,* 53 NY2d 849; *People v Holt,* 182 Misc 2d 919.) II. Appellant did not validly waive his right to adjudication before a Criminal Court judge, where the court—a judicial hearing officer—never ascertained whether appellant understood he was consenting to adjudication before a judicial hearing officer by allegedly signing a written waiver form. (*People v Scalza,* 76 NY2d 604; *Taylor v Illinois,* 484 US 400; *People v Ahmed,* 66 NY2d 307; *People v Parisi,* 276 NY 97; *Johnson v Zerbst,* 304 US 458; *People v De Jesus,* 42 NY2d 519; *People v Moreno,* 70 NY2d 403; *People v Brown,* 24 NY2d 168; *People v Ahmed,* 66 NY2d 307; *People v Patterson,* 39 NY2d 288.) III. An accusatory instrument alleging a violation of a Parks and Recreation Department Rules provision containing exclusionary language was jurisdictionally defective where it failed to allege any factual allegations to establish that the exclusion did not apply to appellant. (*People v Case,* 42 NY2d 98; *People v Santana,* 7 NY3d 234; *People v Dumas,* 68 NY2d 729; *People v Kohut,* 30 NY2d 183; *People v Alejandro,* 70 NY2d 133; *People v Hall,* 48 NY2d 927; *People v Casey,* 95 NY2d 354; *People v Zambounis,* 251 NY 94; *People v Rodriguez,* 113 AD2d 337, 68 NY2d 674; *People v Devinny,* 227 NY 397.)

*Charles J. Hynes, District Attorney,* Brooklyn (*Lori Glachman* and *Leonard Joblove* of counsel), for respondent. I. Defendant's claim that CPL 350.20 is unconstitutional is without merit. (*Weems v United States,* 217 US 349; *People v Tichenor,* 89 NY2d 769; *Glass v Thompson,* 51 AD2d 69; *Matter of Met Council v Crosson,* 84 NY2d 328; *Motor Veh. Mfrs. Assn. of U.S. v State of New York,* 75 NY2d 175; *People v Scalza,* 76 NY2d 604; *Carson v Thompson,* 77 Misc 2d 872, 51 AD2d 692; *Matter of Rosenthal v Hartnett,* 36 NY2d 269; *Matter of Dolce v Nassau County Traffic & Parking Violations Agency,* 7 NY3d 492; *Commodity Futures Trading Comm'n v Schor,* 478 US 833.) II. Defendant failed to preserve for appellate review his claim that the procedure employed in obtaining his agreement to be tried by a judicial hearing officer was invalid. In any event, the claim is meritless. (*People v Magnano,* 77 NY2d 941; *People v Lumpkins,* 11 AD3d 563; *People v Holt,* 182 Misc 2d 919; *Matter of Theroux v Reilly,* 1 NY3d 232; *People v Jackson,* 87 NY2d 782; *People v Scalza,* 76 NY2d 604; *New York v Hill,* 528 US 110; *United States v Olano,* 507 US 725; *People v Colon,* 90 NY2d 824; *People v Ferguson,* 67 NY2d 383.) III. The information was facially sufficient. (*People v Konieczny,* 2 NY3d 569; *People v Alejandro,* 70 NY2d 133; *People v Dumas,* 68 NY2d 729; *People v Devinny,* 227 NY 397; *Harris v White,* 81 NY 532; *Fleming v People,* 27 NY 329; *People v Santana,* 7 NY3d 234; *People v Sylla,* 7 Misc 3d 8; *People v Campbell,* 6 Misc 3d 130[A], 2005 NY Slip Op 50064[U]; *People v Bradford,* 227 NY 45.)

**OPINION OF THE COURT**

CIPARICK, J.

In this appeal arising out of defendant's conviction for failure to comply with a posted sign indicating a New York City park's closing time, we conclude that Criminal Procedure Law § 350.20, which permits class B misdemeanors to be tried and determined by judicial hearing officers (JHOs) "upon agreement of the parties," is constitutional and that the parties' agreement to engage in JHO adjudication here—as evidenced by a signed consent form and defense counsel's participation in the JHO proceeding—was valid. In addition, we apply the standard of common sense and reasonable pleading and hold that the People's information was sufficient.

I.

An information charged defendant with violating New York City Parks and Recreation Department Rules (56 RCNY) § 1-03

(c) (2), which prohibits persons from being in city parks after their posted closing times (*see* 56 RCNY 1-03 [c] [2]). Although the rule contains qualifying language stating that a person may disregard a park sign "upon order by a Police Officer or designated Department employee" (*id.*), the information—which was prepared by a police officer—did not state whether that portion of the rule applied to defendant. Rather, it indicated that the officer had observed defendant in Brooklyn's Betsy Head Park at 2:06 A.M., on December 15, 2005, despite the fact that a park sign stated a closing time of 9:00 P.M. Violation of rule 1-03 (c) (2) is punishable as a class B misdemeanor (*see* 56 RCNY 1-07 [a]; Penal Law § 70.15 [2]), the maximum penalty for which is 90 days' imprisonment and a $1,000 fine (*see* 56 RCNY 1-07 [a]).

On February 16, 2006, defendant—represented by counsel—was arraigned and pleaded not guilty. The court informed defendant that he would need to return for trial and that he would receive certain "paper work." Contained in defendant's Criminal Court file is a form entitled "CONSENT TO ADJUDICATION BEFORE A JUDICIAL HEARING OFFICER (JHO)." Although the form explained that defendant's case was being referred to a JHO for "trial and/or final disposition and sentence," it explicitly stated that defendant had "the right to adjudicate this case before a Criminal Court judge." Further, the form listed the scope of the JHO's authority as derived from CPL 350.20. Thus, it stated that

> "[t]he Judicial Hearing Officer who adjudicates this case will:
>
> "a) determine all questions of law; and
>
> "b) act as the exclusive trier of all issues of fact; and
>
> "c) render a verdict; and
>
> "d) impose a sentence if required."

Accordingly, the form indicated that the JHO presiding over defendant's class B misdemeanor trial "shall have the same powers as a Criminal Court judge and any action taken by the Judicial Hearing Officer shall be deemed the action of the Criminal Court." The form also stated that defendant would have the right to seek an appeal from the JHO's decision in his case in the same manner as he would had it been tried by a Criminal

Court judge. Finally, immediately above its signature line, the form clarified that "[b]y signing this form[,] you hereby consent to having your case adjudicated before a Judicial Hearing Officer."

Defendant apparently signed the JHO consent form.[1] With the assistance of counsel, he proceeded to trial before a JHO and was convicted of violating the relevant Parks Department rule based on the testimony of the observing officer. During trial, defendant did not attempt to prove that he had been granted permission by a police officer or Parks Department employee to remain in Betsy Head Park past its posted closing time. On April 17, 2006, he was sentenced to a $75 fine or 10 days in jail. Approximately nine months later, he was resentenced to time served.

The Appellate Term affirmed (19 Misc 3d 145[A], 2008 NY Slip Op 51127[U]). The court held that the People were not required to plead that the qualifying language in 56 RCNY 1-03 (c) did not apply to defendant. Further, the court concluded that defendant had given a valid consent to JHO adjudication that was supported by his counsel's participation—without objection—in defendant's trial before a JHO. A Judge of this Court granted defendant leave to appeal (11 NY3d 787 [2008]) and we now affirm.

## II.

We have previously examined the legislative history of the 1983 enactment (*see* L 1983, ch 840, § 11) codifying CPL 350.20 (*see People v Scalza*, 76 NY2d 604, 608 [1990]). The goal of this legislation was to utilize the services of highly-qualified retired judges, or JHOs, to alleviate the backlog and delay that had begun to "seriously cripple[ ]" our State's court system and had "undermine[d] public confidence in the fairness of justice in our

---

1. Before the Appellate Term, defendant seemed to acknowledge in his brief that the signature on the form was his own by arguing that "although appellant signed a form purporting to consent to adjudication by a Judicial Hearing Officer" the trial court erred in failing to elicit his consent on the record. In the same brief, though, defendant complained that the trial court had not inquired whether the "signature was his signature" or whether he understood the meaning or significance of his consent to adjudication before a JHO. In his present appeal, defendant refers to the signature on the consent form as a "purported" one. Putting aside defendant's ostensibly shifting positions on the authenticity of the signature on the JHO consent form, there is nothing in the record to indicate that the signature is not defendant's and, as such, we will presume that it was.

state" (*see* Report of Committee to Utilize the Services of Retired Judges, Bill Jacket, L 1983, ch 840, at 60 [hereinafter Retired Judges Report]). One of the ways in which the Legislature sought to alleviate these problems was by granting judges the discretionary authority to assign class B and unclassified misdemeanors to JHOs for adjudication "upon agreement of the parties" (*see* CPL 350.20 [1]). In such capacity, JHOs would act as a court (*see* CPL 350.20 [1]-[3]). Thus, with consent of the litigants, JHOs would be empowered to "(a) determine all questions of law; (b) act as the exclusive trier of all issues of fact; and (c) render a verdict" (*see* CPL 350.20 [1] [a]-[c]). Consensual JHO adjudication was intended to contribute to the goal of reducing pernicious calendar congestion, thereby fostering the more efficient administration of criminal justice (*see* Retired Judges Report, Bill Jacket, L 1983, ch 840, at 74). The question we must now decide is whether CPL 350.20's pursuit of this worthy goal comports with the State and Federal Constitutions. For the reasons set forth below, we hold that it does.

### III.

Defendant mounts two facial attacks against the constitutionality of CPL 350.20. He contends that it violates New York Constitution, article VI, § 15 (a) which provides for the establishment of the New York City Criminal Court and sets certain qualifications for that court's judges.[2] Defendant also argues that he has both a federal and state due process right to adjudicate his class B misdemeanor case before a Criminal Court judge and that CPL 350.20 improperly abridges that right.

To succeed in these arguments, defendant must shoulder a "substantial burden" (*see People v Scalza*, 76 NY2d 604, 607 [1990]). Duly enacted statutes enjoy a "presumption of constitutionality" (*see id.*; *Dalton v Pataki*, 5 NY3d 243, 255 [2005]). Thus, a party who asserts that a statute is facially unconstitutional must demonstrate "beyond a reasonable doubt" that the statute suffers from "wholesale constitutional impairment" (*see Matter of E.S. v P.D.*, 8 NY3d 150, 158 [2007], quoting *Matter of Moran Towing Corp. v Urbach*, 99 NY2d 443, 448 [2003] [internal quotation marks omitted]; *accord Scalza*, 76 NY2d at 607 ["The substantial burden of proving unconstitutionality beyond a reasonable doubt rests with a statute's

---

2. Article VI, § 15 (c) specifies the range of the Criminal Court's jurisdiction.

antagonist"]). Each prong of defendant's dual facial challenge fails to meet this exacting standard.

Defendant's article VI, § 15 (a) argument is premised almost entirely on our decision in *Scalza*. In that case, we dealt with CPL 255.20 (4), which permits a court to refer any pretrial motion in a criminal case to a JHO for the preparation of a report setting forth the JHO's proposed findings of fact and conclusions of law (*see Scalza*, 76 NY2d at 606). Such referral may be made without consent of the parties and the court retains power to accept, reject, or modify the JHO's findings or even to review the motion de novo (*see id.* at 609). The defendant in *Scalza* argued that the nonbinding referrals authorized by CPL 255.20 (4) were unconstitutional under article VI, §§ 10 and 11 of the New York Constitution (*see id.*). We rejected that argument based on the lack of any "express or implied prohibitory language" in those constitutional provisions that would prevent the Legislature from authorizing nonconsensual JHO referrals to report (*see id.*). As we explained, sections 10 and 11 "provide essentially for the organization and jurisdiction of County Courts" (*id.*).

The same is true of article VI, § 15 (a). It requires the Legislature to establish "a single court of city-wide criminal jurisdiction in and for the city of New York" and mandates that the judges comprising that court be New York City residents, who are appointed by the City's mayor to serve 10-year terms (NY Const, art VI, § 15 [a]).[3] It does not speak to whether the Legislature may establish different tribunals with concurrent jurisdiction or whether it may authorize litigants to resort to those tribunals upon their agreement. Nonetheless, defendant maintains that article VI, § 15 (a) somehow precludes the Legislature from authorizing a JHO to determine a class B misdemeanor case when all parties consent to such adjudication. Defendant points to nothing in the express text of section 15 (a) to support this argument. Nor have we been able to locate any additional interpretative support for it (*see* 4th Ann Rep of NY Jud Conf, Comment, at 92-93 [1959] [indicating that main purpose of section 15 (a) was to achieve administrative efficiency]; *see also* Carter, New York State Constitution: Sources of Legislative Intent, at 64-65 & n 1 [2d ed]; NY CLS, Book 42A, NY Const art VI, Note ["The purpose of new Art(icle) 6 was to establish a unified court system"]).

---

**3.** Additional criteria for service on the City's Criminal Court are set forth in subsequent sections of article VI (*see* NY Const, art VI, §§ 20, 25).

Defendant is, therefore, forced to rely on certain statements drawn from *Scalza*. Thus, he points to our recognition of the trial court's "nondelegable and exclusive authority to decide" a suppression motion referred to a JHO (*see Scalza*, 76 NY2d at 608), our acknowledgment that during the referral period that court "holds the tether on the case" (*id.* at 609), and our statement that "CPL 255.20 (4) . . . does not undermine or diminish the court's exclusive power to decide" (*id.*). But as the People correctly assert, defendant's constitutional argument divorces these statements from the context in which they were rendered.

At its outset, *Scalza* held that because the trial court retained the ultimate authority to determine a suppression motion after referral to a JHO "no unauthorized or unconstitutional diversion of the trial court's exclusive jurisdiction and responsibility to decide is threatened" (76 NY2d at 607). Thus, the *Scalza* Court was not confronted, as we are here, with a situation in which the Legislature acted expressly to permit JHOs to exercise jurisdiction concurrent with that of a Criminal Court judge in cases where the litigants expressly agree to JHO adjudication of a class B misdemeanor.

As noted earlier, a key piece of section 350.20's legislative history is the Retired Judges Report. In that report, the Committee, under the direction of then-Chief Judge Lawrence Cooke, recognized that "the hearing of minor matters in their entirety by retired judges would free lower-court judges to try more significant matters" (Bill Jacket, L 1983, ch 840, at 74). It thus recommended that JHOs "be authorized to hear and determine, with the consent of the parties, minor criminal matters not requiring a jury" (*id.*). When JHOs were utilized in "this restricted fashion," the Committee did "not foresee any constitutional problems" (*id.*).

To support its constitutional analysis, the Committee cited the Appellate Division's decision in *Glass v Thompson* (*see* Bill Jacket, L 1983, ch 840, at 87 n 31, citing 51 AD2d 69 [2d Dept 1976]). In *Glass*, the court considered an article VI, § 15 challenge to the legislation granting hearing officers—subsequently renamed Housing Court Judges—authority to hear and determine summary proceedings in the Housing Part of the New York City Civil Court (*see* 51 AD2d at 70). The court had "no problem[ ]" concluding that the legislation was constitutional (*id.* at 72). Analogizing hearing officers to "referees" who had been traditionally empowered to hear and determine certain classes of disputes, the court held that section 15 "creates the

Civil Court and specifies the method by which its Judges are to be selected; it does not prohibit references" (*see id.* at 72-73). *Glass* further recognized that the Legislature had authority to provide that certain matters be referred to expert nonjudicial officers even without the litigants' consent so long as the parties' guaranteed constitutional rights, such as the right to trial by jury, were not violated (*see id.* at 76).

We, too, have cited *Glass* with approval (*see Motor Veh. Mfrs. Assn. of U.S. v State of New York*, 75 NY2d 175, 185 [1990]; *Matter of Met Council v Crosson*, 84 NY2d 328, 333 [1994]). Indeed, we did so in upholding the New Car Lemon Law, which gave consumers the option of bypassing a Supreme Court civil action by compelling manufacturers to arbitrate claims arising out of alleged car defects (*Motor Veh.*, 75 NY2d at 185). Here, we do not deal with such a "compulsory reference[ ]" to a JHO (*see Motor Veh.*, 75 NY2d at 185), but with one that is consented to by defendant and the People. Moreover, as in *Glass* and *Motor Vehicle*, defendant's jury trial rights are not threatened since—absent consent to JHO referral—this class B misdemeanor proceeding would have been adjudicated in a bench trial (*see* CPL 340.40 [2]; Preiser, Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, CPL 340.40, at 195 ["(T)here is no constitutional requirement—federal or state—of a jury trial for offenses punishable by 6 months or less"]). Thus, as the Legislature envisioned, the trial of defendant's case represented the sort of referral upon the consent of the parties that has long been permitted in this state (*see Glass*, 51 AD2d at 75; *see also Motor Veh.*, 75 NY2d at 185; CPLR 4317 [a] ["The parties may stipulate that any issue shall be determined by a referee"]).

It is clear that "[l]egislation which affects the jurisdiction" of a trial court is "not necessarily void" (*Motor Veh.*, 75 NY2d at 184). Indeed, in *Matter of Dolce v Nassau County Traffic & Parking Violations Agency* (7 NY3d 492 [2006]), we held that the Legislature had authority to confer jurisdiction over certain traffic and parking prosecutions to an administrative arm of the Nassau County District Court staffed by JHOs (*see id.* at 495-496 & n 2). Such jurisdiction was proper even though JHO adjudication was permitted "without consent of the parties" (*see id.* at 495, citing CPL 350.20 [5]). Thus, here, where consent is a prerequisite to JHO adjudication, we have little difficulty concluding that nothing in article VI, § 15 (a) prohibited the Legislature from enacting CPL 350.20.

■ Defendant also asserts a violation of the Federal and State Due Process Clauses. To evaluate these claims, we must balance "the interests of the parties to the dispute, the adequacy of the contested procedures to protect those interests, and the government's stake in the outcome" (*see Scalza*, 76 NY2d at 610 [internal quotation marks omitted]; *People v Thompson*, 90 NY2d 615, 621 [1997]; *see also United States v Raddatz*, 447 US 667, 677 [1980], citing *Mathews v Eldridge*, 424 US 319, 335 [1976]). We agree with the People that an application of these factors demonstrates that CPL 350.20 easily passes constitutional muster.

Initially, defendant incorrectly asserts that his due process interest is that of having his class B misdemeanor case determined by a "judge." But what defendant is actually entitled to is a "fair trial in a fair tribunal" (*see Friedman v State of New York*, 24 NY2d 528, 542 [1969], quoting *In re Murchison*, 349 US 133, 136 [1955]; *People v Moore*, 42 NY2d 421, 431 [1977]). Defendant was charged with a "petty offense" or one which authorizes a period of incarceration of six months or less (*see Duncan v Louisiana*, 391 US 145, 160 [1968]; *Baldwin v New York*, 399 US 66, 73 [1970]; *Blanton v North Las Vegas*, 489 US 538, 543 [1989]). Indeed, in the absence of CPL 350.20 his case would have proceeded to a bench trial before a Criminal Court judge (*see* CPL 340.40 [2]; *People v Urbaez*, 10 NY3d 773, 775 [2008]). Defendant points to nothing in the nature of a consensual JHO adjudication that gives rise to any substantial concern that the presiding JHO would lack the neutrality that is a fundamental command of due process (*see Marshall v Jerrico, Inc.*, 446 US 238, 242 [1980]).

The breadth of defendant's interest here is further circumscribed by the critical fact that the Legislature has carefully provided that JHOs may only be assigned to adjudicate class B misdemeanors "upon agreement of the parties" (CPL 350.20 [1]).[4] But defendant says that consensual JHO references in class B misdemeanor cases violate due process unless a Crimi-

---

4. In this respect, our Legislature has accorded defendants in petty criminal cases more statutory protection than that offered under federal law, which permits federal magistrates to try all petty criminal cases without the defendant's consent (*see* 18 USC § 3401 [b] ["Any person charged with a misdemeanor, *other than a petty offense* may elect . . . to be tried before a district judge for the district in which the offense was committed" (emphasis added)]; 18 USC §§ 19, 3559 [a] [7]; *see also United States v Rivera-Negron*, 201 FRD 285, 288-289 [D PR 2001], citing *United States v McCrickard*, 957 F Supp 1149 [ED Cal 1996] [rejecting constitutional challenge to section 3401 (b)]).

nal Court judge is required to pass upon the result reached by a JHO before rendering a final determination. Although this Court and the U.S. Supreme Court have concluded that the nonconsensual referral of a pretrial suppression motion comports with due process because a judge retains ultimate authority to decide the motion after the referral is completed (*see Scalza*, 76 NY2d at 609-610; *Raddatz*, 447 US at 680), these holdings do not control where, as here, a referral to a JHO to decide a petty criminal case is made upon consent of the parties.[5]

In this regard, the U.S. Supreme Court's holdings in *Gomez v United States* (490 US 858 [1989]) and *Peretz v United States* (501 US 923 [1991]) are instructive. Both cases concerned the question whether the "additional duties" clause of the Federal Magistrates Act (18 USC § 636 [b] [3]) permitted a district judge to assign a federal magistrate to preside over jury selection in a felony trial. In *Gomez*, the court answered that question in the negative (*see* 490 US at 875-876). But in *Peretz*, it reached the opposite conclusion because, unlike in *Gomez*, defense counsel had consented to the magistrate's participation in voir dire (*see* 501 US at 933). As the Court explained, "the defendant's consent significantly changes the constitutional analysis" (*see id.* at 932). We agree and perceive no due process problem with CPL 350.20 since it only allows for the adjudication of class B misdemeanors—a type of petty crime—upon the express consent of the parties (*cf. Peretz*, 501 US at 936 ["There is no constitutional infirmity in the delegation of felony trial jury selection to a magistrate when the litigants consent"]; *see also id.* at 933 [noting that "with the parties' consent, a district judge may delegate to a magistrate supervision of entire civil and misdemeanor trials"]).

We likewise conclude that CPL 350.20's consensual JHO adjudication procedure adequately protects defendant's interest in a fair trial. Before their appointment, prospective JHOs are carefully evaluated by the Chief Administrator of the Courts to ensure that they possess the "physical and mental capacity, competence, work ethic, experience and judicial temperament necessary to perform the duties of a judicial hearing officer, and [are] well qualified to serve on the panels in the courts to which [they] will be designated" (*see* 22 NYCRR 122.2 [a]; *see also* Ju-

---

5. *Scalza*, of course, dealt with a statutory provision potentially applicable in felony prosecutions (*see* CPL 255.20 [4]).

diciary Law § 850). If deemed fit for service, JHOs are: appointed for potentially renewable one-year terms (*see* 22 NYCRR 122.3, 122.3-b), subject to performance evaluations (*see* 22 NYCRR 122.3-a), assigned as necessary to "panels" of particular courts based upon the determination of the Chief Administrator (*see* 22 NYCRR 122.5), assigned to preside over particular matters or court parts based upon a variety of factors including their "previous experience and expertise" (*see* 22 NYCRR 122.6 [a]-[b]), and subject to removal "for unsatisfactory performance or for any conduct incompatible with service as a judicial hearing officer" (*see* 22 NYCRR 122.5 [e]). These and other safeguards (*see generally* 22 NYCRR part 122), when combined with the consensual nature of JHO adjudication under CPL 350.20 and the availability of appellate review (*see* CPL 350.20 [3]), persuade us that the statute under review adequately protects defendant's due process right to a fair tribunal in which to adjudicate this petty criminal case.

As to the relevant governmental interest, CPL 350.20's legislative history makes plain the detrimental effects that congestion and backlog in our State's courts can have upon the administration of justice (*see* Retired Judges Report, Bill Jacket, L 1983, ch 840, at 60, 74-75). Indeed, such delay represents a "recognized evil to the fair administration of the criminal justice system" (*see Scalza*, 76 NY2d at 604; *cf. Urbaez*, 10 NY3d at 775 ["Especially in New York City, with its high volume of misdemeanor cases, (CPL 340.40 [2]) furthers the important public interest of effective judicial administration"]). Thus, the governmental interest in ensuring the maintenance of a carefully-vetted, highly-qualified staff of JHOs standing ready to fairly and efficiently adjudicate petty criminal cases is substantial and further supports our conclusion that defendant's facial due process challenge to CPL 350.20 cannot succeed.

It is important to emphasize that the nature of this case requires us to leave certain questions for another day. Among the issues not now before us is whether the Legislature could empower a non-judge, without a defendant's consent, to adjudicate even a petty criminal case in which—as in this one—imprisonment is a possible outcome (*cf. Matter of Rosenthal v Hartnett*, 36 NY2d 269, 271 [1975] [approving administrative adjudication of traffic infractions "where such determination may result in the imposition of a fine but not imprisonment"]). Nor do we decide whether trials of felony or class A misdemeanors may be assigned to a non-judge even though a defendant

has consented to such adjudication and waived the right to a jury trial. Although we hold that CPL 350.20 is constitutionally valid, our holding is necessarily limited by the particular statutory and factual context that we consider here. There are unquestionably constitutional limits on the extent to which the Legislature can assign the task of adjudicating criminal cases to individuals who are not judges or justices. We have never decided, and do not now decide, exactly what those limits are; we only hold that they have not been exceeded here.

## IV.

Next, defendant contends that the consent to JHO adjudication was ineffective because the trial court did not engage him in an oral colloquy regarding whether he understood the effect of the signed JHO consent form. As an initial matter, unlike other statutes governing waivers of rights in criminal proceedings, CPL 350.20 requires the "parties['] agreement," not defendant's personal consent (compare e.g. CPL 270.35 [1] ["defendant" must consent in writing and in open court to replacement of juror by alternate juror during deliberations]; CPL 320.10 [1]-[2] [specifying procedure by which "defendant" may waive right to jury trial]). More significantly, though, defendant was represented by counsel. And "[i]t is well established that a defendant, 'having accepted the assistance of counsel, retains authority only over certain fundamental decisions regarding the case' such as 'whether to plead guilty, waive a jury trial, testify in his or her own behalf or take an appeal' " (see People v Colon, 90 NY2d 824, 825-826 [1997]).

We hold that the decision whether to agree to JHO adjudication of a petty criminal case represents the sort of "tactical decision" best left to the determination of counsel (cf. Gonzalez v United States, 553 US 242, —, 128 S Ct 1765, 1770 [2008]). Such decision turns upon a myriad of case-specific factors that a lawyer is well-suited to assess, including the practices of members of the JHO panel in the relevant jurisdiction, the likelihood that JHO adjudication will be more expeditious and therefore beneficial to the defendant, and the potential for having assigned to the defendant's trial a JHO before whom counsel has previously had a favorable experience (cf. People v Ferguson, 67 NY2d 383, 390 [1986]; Gonzalez, 553 US at —, 128 S Ct at 1770). Here, defense counsel participated fully in a trial held before a JHO without objection and the Criminal Court file contains a JHO consent form signed by defendant. We think

that the consent to JHO adjudication was sufficient for present purposes.

## V.

Lastly, defendant argues that the accusatory instrument was jurisdictionally defective. The facial sufficiency of the People's information (*see* CPL 100.40 [1]; 100.15 [3]) turns upon whether the statement "except such sign may be disregarded upon order by a Police Officer or designated Department employee" as found in the Parks Department rule that defendant was convicted of violating is, as defendant argues, a true "exception" that must be pleaded by the People or whether it operates as a "proviso" that defendant was required to raise as a bar to prosecution (*see* 56 RCNY 1-03 [c] [2]; *People v Santana*, 7 NY3d 234, 236 [2006]). Although the murky contours of "exceptions" and "provisos" have long been the subject of debate (*see People v Bradford*, 227 NY 45, 48 [1919]; *People v Devinny*, 227 NY 397, 401 [1919]; *Santana*, 7 NY3d at 236-237), we continue to utilize those ancient labels.

The main goal of the interpretative rules governing exceptions and provisos is to discover the intention of the enacting body (*see Santana*, 7 NY3d at 237; *see also* McKinney's Cons Laws of NY, Book 1, Statutes § 211, Comment, at 369 ["'(T)he distinction between a proviso and an exception will be wholly disregarded, if necessary to give effect to the manifest intention of the Legislature"]). Thus, the fact that rule 1-03's qualifying language is introduced by "except" is not determinative (*see* McKinney's Cons Laws of NY, Book 1, Statutes § 211, Comment, at 370). In *Santana*, we applied the general rule that qualifying language found outside the text of a relevant Penal Law provision is in the nature of a "proviso" (*see* 7 NY3d at 237), but our ultimate conclusion was premised on the belief that the Legislature could not reasonably have intended the People to negate the existence of each of the myriad labor disputes delineated in Judiciary Law § 753-a in a prosecution for criminal contempt based on the defendant's violation of an order of protection prohibiting him from residing in an apartment (*see id.*).

Here, we conclude that, as a matter of common sense and reasonable pleading (*see Devinny*, 227 NY at 401; *accord Santana*, 7 NY3d at 237), the City's Parks Department did not intend that the People plead and prove that no police officer or Parks Department employee had authorized defendant to ignore

a posted closing time. Such information is uniquely within a defendant's knowledge, and to require the People to plead and negate the existence of the relevant permission would require them to go to "intolerable lengths," including innumerable interviews of officers and employees in the area during the date in question (*see id.*). These efforts would serve "[n]o useful purpose of narrowing issues or giving notice," but would merely give rise to "technicalitie[s that] could be used belatedly to stifle an otherwise viable prosecution" (*cf. People v Kohut*, 30 NY2d 183, 191 [1972]). As such, we hold that the Parks Department intended the police officer/department employee qualifying language to operate as a "proviso" that must be pleaded and proved by the defendant.

We conclude that defendant's constitutional arguments must fail, the consent to JHO adjudication was valid, and that defendant's claim as to the jurisdictional deficiency of the accusatory instrument is meritless, as are his remaining contentions. Accordingly, the order of the Appellate Term should be affirmed.

JONES, J. (dissenting). I join in Judge Ciparick's opinion except as to section IV, from which I dissent.

Criminal Procedure Law § 350.20 permits the trial of an information by a judicial hearing officer. This statute provides that "the court may, upon agreement of the parties, assign a judicial hearing officer to conduct the trial" (*id.*). Inasmuch as there is no basis for a finding of a knowing waiver by defendant of the right to a trial by a judge, I would reverse this conviction.

The Legislature enacted this provision to ameliorate the pernicious effects that the congestion and backlog of cases in our state's courts can have on the administration of justice. The majority tells us that under this statute a defendant's interest in a fair trial is protected because the defendant consents to trial by a judicial hearing officer. Where that consent is given, I agree. However, the short shrift given to the procedural safeguards in this case precludes a finding of consent.

To show that the defendant waived his right to be tried by a judge of the Criminal Court, the People and the majority rely on a form found in the court file which purports to be signed by the defendant. This form is neither dated, nor witnessed by the court, a court clerk or counsel. In addition, and more importantly, it is not mentioned on the record by the defendant, the attorney, the court clerk or the court. Even assuming defendant

signed the form there is nothing in the record to show that he knew what he was signing.

The majority says there was no need here for any colloquy between the court and the defendant because the statute merely requires "agreement of the parties" for a waiver, not a personal waiver by defendant. However, we must ask who is the "party" in this case, if it is not the defendant. There is no written waiver purported to be signed by any of the three different lawyers who appeared on behalf of defendant prior to his trial and conviction. Neither is there any record of an oral waiver of defendant's right to be tried by a judge by any of the lawyers who represented defendant. I agree that defendant could waive his right *through* counsel, and I would not require elaborate formalities to accomplish that. But the waiver must at least be mentioned on the record in defendant's presence, to provide some assurance that defendant knew he was giving up the right to be tried by a judge.

The majority points out the various waivers and rights encountered in criminal proceedings from replacing a juror with an alternate juror (CPL 270.35 [1]) to waiver of a right to a jury trial (CPL 320.10). Some waivers must be done by defendant, in writing and in open court, and others may be done by counsel, on behalf of the defendant. However, the one common element is that they are memorialized on the record in open court. This is the way lawyers communicate when representing a client in the exercise of a fundamental right.

The majority asserts that the decision to waive a trial by a judge and proceed before a judicial hearing officer is a decision to be made by counsel. There is no authority to support that position; indeed, the Criminal Court form used to communicate the waiver is to be signed by a defendant alone. Further, the majority surmises that an experienced defense counsel makes a "tactical decision" to try a case before a judicial hearing officer. This reasoning overlooks the fact that in New York City Criminal Courts, attorneys from the 18-B Panel may be assigned on a per diem basis to a particular court part to handle all of the cases that are on the court calendar for the day. In fact, defendant was represented by no less than five different attorneys during the pendency of this matter.

As in all other waivers that occur in criminal proceedings, there is no need for a particular catechism. Nevertheless, there must be record evidence of a knowing, voluntary and intelligent

waiver of the right to a trial by a judge. Here, the complete absence of such record evidence requires reversal.

Chief Judge LIPPMAN and Judges GRAFFEO, READ and PIGOTT concur with Judge CIPARICK; Judge JONES dissents and votes to reverse in a separate opinion in which Judge SMITH concurs.

Order affirmed.