OPINION OF THE COURT
Heidi C. Cesare, J.
Defendant is charged in an information with obstructing governmental administration in the second degree (Penal Law § 195.05), resisting arrest (Penal Law § 205.30), unlawful vending in a city park (56 RCNY 1-05 [b] [1]) and disorderly conduct (Penal Law § 240.20). In his omnibus motion defendant moves (1) to dismiss all counts in the information as facially insufficient, (2) to preclude unnoticed statement and identification testimony, (3) to preclude prior bad acts evidence, (4) to compel a bill of particulars and discovery, and (5) for the right to make further motions as necessary. In their response, the People also move for reciprocal discovery. For the reasons set forth below, defendant’s motion to dismiss is denied and the remaining motions of both parties are granted.[1]
I. Allegations
The factual allegations of the accusatory instrument provide that on or about May 27, 2015 at about 2:00 p.m., in front of 80 South Street in the County and State of New York:
“[Deponent is] informed by [informant patrolman] that he observed the defendant, on Pier 15 in front of 80 South Street, in the County and State of New York, approaching numerous pedestrians and offering to sell them tour tickets. [Deponent is] further informed that [informant patrolman] observed one individual give the defendant USC in exchange for tickets. [Deponent is] further informed by [informant patrolman] that the defendant did not have a valid New York City Parks permit displayed for selling the tickets.
“[Deponent is] further informed by [informant *624 patrolman], that when he approached the defendant to ask for the defendant’s identification and to issue him a summons for the above conduct, the defendant pushed the [informant patrolman] about the chest, turned and ran away from [informant patrolman].
“When [deponent] attempted to arrest the defendant for the above conduct, the defendant was standing on a public road and the defendant flailed his arms by swinging his arms around his body, refused to place his arms behind his back, and attempted to run away from myself and the other officers. The defendant’s actions made it difficult to place the defendant in handcuffs without the assistance of three other officers and the use of OC spray.
“[Deponent] further observed that while arresting the defendant, a crowd of at least thirty people formed a circle around [deponent] and the defendant, and that the crowd was yelling at [deponent] and other officers, and that the crowd was standing in a public road. [Deponent] further observed that the crowd blocked the public roadway preventing at least ten vehicles from proceeding on the road.”
II. Procedural History
On May 28, 2015, the defendant was arraigned on a criminal complaint charging him with obstructing governmental administration in the second degree (Penal Law § 195.05), resisting arrest (Penal Law § 205.30), unlawful vending in a city park (56 RCNY 1-05 [b] [1]), and disorderly conduct (Penal Law § 240.20). At the arraignment, the defendant was released on his own recognizance and the court adjourned the case to July 23, 2015 for the People to file a supporting deposition. Off calendar, on June 9, 2015, the People served and filed a corroborating affidavit, a certificate of readiness and a voluntary disclosure form. Subsequently, on July 21, 2015, the defendant served and filed his omnibus motion including the instant motion to dismiss. On July 23, 2015, the defendant and his attorney appeared before the court. The court noted the People’s plea bargain offer, continued parole, and adjourned the case to September 21, 2015 for the People’s response and the court’s decision. On September 21, 2015, the defendant and his attorney appeared before the court. The People served and filed their response to the defendant’s omnibus motion, the court *625 noted the People’s plea bargain offer, and adjourned the case to November 9, 2015 for the court’s decision on defendant’s motions.
III. Discussion
Charged with obstruction of justice, resisting arrest, unlawful vending in a city park, and disorderly conduct, defendant moves to dismiss all counts on the ground of facial insufficiency. Defendant argues principally that the unlawful vending in a city park (56 RCNY 1-05 [b] [1]) count is facially insufficient because the information fails to allege that defendant’s conduct was not within the “expressive matter” exception (56 RCNY 1-05 [b] [2]) to unlawful vending in a city park. Defendant further argues that the remaining counts are facially insufficient because the defendant’s arrest for unlawful vending in a park was itself unlawful. In response, the People argue that selling tour tickets does not come under the “expressive matter” exception and, additionally, that the language in the complaint “sufficiently negates the [expressive matter] exception.” With respect to unlawful vending in a city park, the court finds that the “expressive matter” exception operates as a “proviso” that need not be negated in the accusatory instrument but may be raised by the accused in his defense at trial. As this was the only challenge to facial sufficiency, the court finds that all four counts of the information are facially sufficient.
A. Facial Sufficiency in General
A valid and sufficient accusatory instrument is a nonwaivable jurisdictional prerequisite to a criminal prosecution (People v Jackson, 18 NY3d 738, 741 [2012]). Since this defendant has not waived his right to be prosecuted by information, the court must assess his motion on the standards governing an information (People v Kalin, 12 NY3d 225, 228 [2009]).
An information is “sufficient on its face” when three requirements are met (CPL 100.40 [1]). One, the information must be in substantial conformity with CPL 100.15 which prescribes the form and content for informations, misdemeanor complaints and felony complaints (100.40 [1] [a]). Two, the “the reasonable cause” requirement demands that the factual allegations in the information and any supporting depositions “provide reasonable cause to believe that the defendant committed the offense charged” (People v Alejandro, 70 NY2d 133, 136 [1987]; CPL 100.40 [1] [b]). Reasonable cause to believe that a person has committed an offense “exists when evidence or information *626 which appears reliable discloses facts or circumstances which are collectively of such weight and persuasiveness as to convince a person of ordinary intelligence, judgment and experience that it is reasonably likely that such offense was committed and that such person committed it” (CPL 70.10 [2]). Three, the “prima facie case” requirement demands that the nonhearsay allegations of the information and supporting depositions “establish, if true, every element of the offense charged and the defendant’s commission thereof” (Alejandro at 136; CPL 100.40 [1] [c]).
A court reviewing for facial insufficiency must subject the allegations in the information to a “fair and not overly restrictive or technical reading” (People v Casey, 95 NY2d 354, 360 [2000]). The court must assume that the allegations are true (People v Konieczny, 2 NY3d 569, 575 [2004]; CPL 100.40 [1] [c]), and consider all “reasonable inferences” that may be drawn from them (Jackson at 747). Allegations are sufficient for pleading purposes where they provide adequate notice to enable a defendant to prepare a defense and protect against double jeopardy (People v Kasse, 22 NY3d 1142 [2014]). That other, innocent inferences could possibly be drawn from the facts is irrevelant on this pleading stage inquiry. (People v Deegan, 69 NY2d 976, 979 [1987].) A valid information need not disprove every potential defense. (People v Cox, 44 Misc 3d 134[A], 2014 NY Slip Op 51162 [U] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2014].)
B. The Proviso/Exception Distinction
Essential allegations are generally determined by the statute defining the crime. Where the defining statute contains an exception, the People, generally, must plead the absence of the exception in the accusatory instrument (People v Santana, 7 NY3d 234, 236 [2006]; see also People v Kohut, 30 NY2d 183, 187 [1972]). However, “if the exception is enacted later in the statute or in a subsequent statute, it is a proviso which the People need neither plead nor prove the negative of in order to make out a prima facie case” (People v Sylla, 7 Misc 3d 8, 12 [App Term, 2d Dept, 2d & 11th Jud Dists 2005]). Distinguishing “exceptions” from “provisos” is a “murky” process “long . . . subject [to] debate” (People v Davis, 13 NY3d 17, 31 [2009]). The goal of the analysis is to “discover the intention of the enacting body,” and in doing so the court must comply with “common sense and reasonable pleading” {id.). The proviso/exception distinction, however, “should not be so mechanically applied that substance yields to form and that the burden of pleading *627 and proof is determined solely by the accidental position in which the clauses of the statute are drafted” (Sylla at 12). The conventional distinction between a proviso and an exception will be “wholly disregarded ... if necessary to give effect to the manifest intention of the Legislature” (Davis at 31).
C. The expressive matter defense is a proviso that need not be pleaded in the information.
The defendant raises the novel issue of whether the “expressive matter” defense to unlawful vending in a city park is an “exception” to the statute that must be pleaded in the accusatory instrument or a “proviso” that need not be pleaded by the prosecution but may be raised as a defense at trial by the accused.
Rules of City of New York Department of Parks and Recreation (56 RCNY) § 1-05 (b) (1) provides:
“No person in or on any property under the jurisdiction of the Department shall sell, offer for sale, hire, lease or let anything whatsoever, including, but not limited to goods, services, or entertainment, or provide or offer to provide services or items, or entertainment in exchange for a donation (hereinafter ‘vend’), except under and within the terms of a permit, or except as otherwise provided by law.”
“Expressive matter” is defined as “materials or objects with expressive content, such as newspapers, books, or writings, or visual art such as paintings, prints, photography, sculpture, or entertainment” (56 RCNY 1-02). The “expressive matter” defense, enacted in a subsequent section of the same chapter, provides: “Persons may vend expressive matter ... on property under jurisdiction of the Department without a permit, but must comply with all applicable provisions of these rules” (56 RCNY 1-05 [b] [2]). The rules an expressive matter vendor must comply with under the regulated uses of a New York City park are legion (see 56 RCNY 1-05 [b] [2]-[8]).[2]
*630 Here, the expressive matter defense is defined in a separate and subsequent paragraph from the paragraph defining unlawful vending (see 56 RCNY 1-05 [b] [1], [2]). As a matter of common sense and reasonable pleading, it is clear that the enacting body’s intent was to create a “proviso” that the accused could raise as a defense at trial (see Sylla at 13). Further, it would be impracticable and unreasonable to require the prosecution to plead either the lack of expressive content, or alternatively, the presence of expressive content, but then the *631 failure to comply with the myriad rules governing expressive-matter vendors (see e.g. People v Torres, 47 Misc 3d 24 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2015]). For these reasons the court finds that the “expressive matter” defense to unlawful vending in a city park is a “proviso” which need not be negated in the information.
IV. Conclusion
The court finds that the “expressive matter” defense (see 56 RCNY 1-05 [b] [2]) to unlawful vending in a city park (see 56 RCNY 1-05 [b] [1]) is a “proviso” that need not be negated in the information. Since the “expressive matter” defense need not be negated in the information, the allegations are sufficient for pleading purposes to establish reasonable cause to believe and a prima facie case that the defendant committed the crimes charged in the information. For the foregoing reasons, defendant’s motion to dismiss for facial insufficiency is denied.
V. Remaining Motions
Defendant’s motion to preclude unnoticed statement and identification testimony at trial is granted pursuant to CPL 710.30 (3).
Defendant’s motion to preclude the prosecutor from using at trial evidence of defendant’s prior convictions, arrests or bad acts pursuant to People v Sandoval (34 NY2d 371 [1974]) is reserved for the trial court.
Defendant’s motion for a bill of particulars and pretrial discovery is granted to the extent provided by the People in their voluntary disclosure form. CPL 240.20 (1) delineates the items discoverable from the prosecutor and CPL 240.20 (2) provides for the defendant’s securing by subpoena any of these items not in the possession of the prosecutor. The People are reminded of their continuing obligations under Brady v Maryland (373 US 83 [1963]) and People v Rosario (9 NY2d 286 [1961], cert denied 368 US 866 [1961]).
Defendant’s motion seeking the right to make further motions is granted to the extent provided by CPL 255.20 (3).
The People’s request for reciprocal discovery is granted to the extent required by CPL 240.30.

. In deciding this motion the court has considered the written arguments of the parties, the documents in the court file, and the relevant statutes and case law.

. Rules of City of New York Department of Parks and Recreation (56 RCNY) § 1-05 (b) (2)-(8) provides:
“(2) Persons may vend expressive matter, as defined in section 1-02 of this title, on property under jurisdiction of the Department without a permit, but must comply with all applicable provisions of these rules. However, in the specific locations enumerated in paragraph (3) expressive matter vendors may only vend expressive matter at the specifically designated spotsidentified by the Commissioner in the accompanying maps *628 and as marked by a Department decal, medallion, or other form of marking, on the specific location of the approved vending spot, unless they are only vending expressive matter without using a cart, display stand or other device and without occupying a specific location for longer than necessary to conduct a transaction and are otherwise in compliance with Department rules. These spots shall be allocated upon a first come, first serve basis except as otherwise provided by law and any expressive matter vendor may only vend expressive matter centered directly behind the Department decal, medallion, or other form of marking. Only one expressive matter vendor is authorized to vend directly behind the Department decal, medallion, or other form of marking as indicated by the Department decal, medallion, or other form of marking and if multiple expressive matter vendors attempt to vend expressive matter at any one Department decal, medallion, or other form of marking and if it cannot be otherwise determined which expressive matter vendor arrived first, then all such expressive matter vendors at such spot will be in violation of this section and may be directed to leave the area of that Department decal, medallion, or other form of marking immediately. Any such expressive matter vendor failing to leave the area of the Department decal, medallion, or other form of marking immediately upon direction as required under the preceding sentence will be in violation of these rules. Expressive matter vendors can only occupy the designated spots for the purpose of vending expressive matter and only during posted times, which will be consistent with the hours of operation for the park where such designated spots are located in or adjacent to. The designated spots may deviate from the restrictions enumerated in subsection 5 (I), (iv), (v), or (vi), if such spots are determined to be appropriate by the Commissioner given the specific features of the park.
“(3) Expressive matter vendors may not vend in the following general areas unless they vend at the specifically designated spots for such vending on the accompanying maps and in compliance with all other applicable Department rules:
“(i) Central Park at the following locations: (A) the perimeter of the park between East 85th Street and East 60th Street, including all sidewalks and plazas (B) the perimeter of the park between West 86th Street and West 60th Street, including all sidewalks and plazas (C) all of Central Park South, including all sidewalks and plazas (D) Wien Walk and Wallach Walk, (E) pedestrian pathways parallel to East Drive between Grand Army Plaza and the Center Drive, (F) Grand Army Plaza, (G) Pulitzer Plaza, and (H) Columbus Circle.
“(ii) Battery Park, including all perimeter sidewalks.
“(in) Union Square Park, including all perimeter sidewalks.
“(iv) Elevated portions of High Line Park.
“(4) (i) No vendor in or on any property under the jurisdiction of the Department shall allow any item or items used or offered in conjunction with vending to touch, lean against or be affixed *629 permanently or temporarily to any street or park furniture installed on public property or any rock formation, tree, shrub or other planting.
“(ii) No vendor shall block any person from using any street or park furniture installed on public property by way of the vending activity.
“(in) No vendor shall vend anything in such a manner that would damage or otherwise injure Department property, including, but not limited to lawns, plants, animals or buildings.
“(iv) No vendor shall vend anything that is placed immediately on a sidewalk or park path, or on a blanket or board placed immediately upon such surface or on the top of a trash receptacle or cardboard box.
“(v) No vendor shall vend anything over any ventilation grill, cellar door, manhole, transformer vault or subway access grating.
“(vi) No vendor shall vend anything directly from any parked or double parked motor vehicle except for food vendors with appropriate Department and New York City Department of Health and Mental Hygiene permits.
“(vii) No vendor shall vend anything in an unsuitable location because the location is a specialized area including, but not limited to, a zoo, swimming pool, playground, athletic field or court, or skating rink;
“(5) No vendor shall vend anything whatsoever using a display stand that:
“(i) provides less than a twelve (12) foot wide clear pedestrian path measured from the display on the sidewalk or park path to the opposite edge of the sidewalk or park path, except that when there is street or park furniture on the pedestrian path the measurement must be taken from the display to two feet from the street or park furniture in order to determine whether there is less then a twelve (12) foot wide clear pedestrian path;
“(ii) is placed on any other part of a sidewalk under the Department’s jurisdiction other than that which abuts the curb, unless otherwise authorized;
“(in) is within any bus stop, carriage horse stand, pedicab stand, or taxi stand, or is within ten (10) feet of any subway entrance or exit;
“(iv) is within five (5) feet from any street or park furniture, public telephone, disabled access ramp, tree, or from individuals or entities authorized by permit or license by the Commissioner to operate at a specific location;
“(v) is within ten (10) feet from any crosswalk on any path or on any sidewalk under the jurisdiction of the Department;
“(vi) is placed within fifty (50) feet from any monument or other public art installation, including, but not limited to ornamental fountains;
“(vii) occupies more than eight (8) linear feet of public space parallel to the curb or park path;
*630 “(viii) occupies more than three (3) linear feet in depth;
“(ix) is more than five (5) feet high or less than twenty-four (24) inches above the sidewalk or park path where the display surface is parallel to the sidewalk or park path, and may not be less than twelve (12) inches above the sidewalk or park path where the display surface is vertical;
“(x) where a rack or other display structure is placed on the top or above a table or other base, the size of the base is not less than the size of any rack or display structure placed thereon. Nothing shall be placed on the base so as to exceed the size limitations contained in this section;
“(xi) uses any areas other than that area immediately beneath the surface of the display stand for the storage of items for sale, unless permitted by Department license or permit for the use of a fixed location to store items for sale; or
“(xii) fails to use an opaque covering to shield any items stored beneath the surface of the display stand.
“(6) For the purposes of this section a display stand shall mean a movable, portable or collapsible structure, framework, device, container or other contrivance used by a vendor in any property under the jurisdiction of the Department for the purpose of displaying, keeping or storing any goods, wares, merchandise, foodstuffs or expressive matter.
“(7) For the purposes of this section, street or park furniture shall mean any City-installed, maintained or approved structure, including but not limited to, benches, newspaper boxes, tree guards, fire hydrants, trash receptacles, telephone kiosks, newsstands, bus shelters, barricades, bollards, traffic signs, traffic lights, walls, water fountains, or fences located in any property under the jurisdiction of the Department.
“(8) Where exigent circumstances exist and a Department employee or police officer gives notice to a vendor to move temporarily from any location such vendor shall not vend from such location. For the purposes of this section, exigent circumstances shall include, but not be limited to, unusually heavy pedestrian or vehicular traffic, the existence of any obstruction in the park, an accident, fire, or other emergency situation, a parade, special event, demonstration, construction project, maintenance operations, or other such event at or near such location, including periods of set up and take down for such exigent circumstances.”