OPINION OF THE COURT
Kevin B. McGrath, Jr., J.
The defendant, Salvator Messina, is charged by information with one count each of criminal trespass in the third degree (Penal Law § 140.10 [e]), trespass (Penal Law § 140.05), criminal possession of a controlled substance in the seventh degree (Penal Law § 220.03), and resisting arrest (Penal Law § 205.30). On January 24, 2011, the defendant moved to dismiss the criminal trespass in the third degree and trespass counts on the ground that the information is facially insufficient as to those counts. On March 8, 2011, this court denied the defendant’s motion. This opinion will explain the reasons for the court’s ruling.
In determining the instant motion, this court has considered the defendant’s moving papers dated January 24, 2011, the People’s opposing papers dated February 16, 2011, and the defendant’s reply papers dated March 4, 2011.
The information filed in this case provides, in relevant part, that, on December 10, 2010, at 7:55 p.m., at the northeast corner of Lorraine Street and Columbia Street, in Kings County:
“[Police Officer William Kelly] observed the defendant inside the lobby, beyond the vestibule, of the above-mentioned premises which is a New York City Housing Authority building and which property is an FTAP dwelling and is posted with signs saying ‘Loitering and trespassing in lobby, roof, hallway and stairs is not permitted.’ Being asked is defendant [sic] a tenant in the building defendant stated that defendant [sic] NO, I WAS HERE TO SEE MY *320 FRIEND and the officer determined the above response not to be true because DEFENDANT WAS UNABLE TO GIVE AN APARTMENT.
“[Officer Kelly] is the legal custodian of the above-mentioned locations and . . . defendant did not have permission or authority to enter and remain in those premises.”
At the defendant’s arraignment on the accusatory instrument, the People filed with the court the supporting deposition of Officer Kelly — a form comprised of a number of checked boxes and filled-in fields — alleging facts substantially identical to those alleged in the information.[1]
An information is sufficient on its face when it complies with the form requirements of CPL 100.15; when the allegations contained in the factual portion thereof, read together with those contained in any supporting depositions, provide reasonable cause to believe that the defendant had committed a crime; and when the elements of the offenses charged are established by nonhearsay allegations. (See CPL 100.40 [1].) Among the mandates of CPL 100.15 is the requirement that the information allege facts of an evidentiary character tending to support the charges. (CPL 100.15 [3].) The failure of an information to meet these standards generally serves as a jurisdictional bar to prosecution. (See People v Alejandro, 70 NY2d 133, 136 [1987] [failure of information to contain allegations establishing a prima facie case is a nonwaiveable jurisdictional defect]; but see People v Casey, 95 NY2d 354, 362 [2000] [nonhearsay requirement of CPL 100.40 is not jurisdictional].) Furthermore, “[s]o long as the factual allegations of an information give an accused notice sufficient to prepare a defense and are adequately detailed to prevent a defendant from being tried twice for the same offense, they should be given a fair and not overly restrictive or technical reading.” (Id. at 360.)
Section 140.10 of the Penal Law defines criminal trespass in the third degree to include “knowingly enter[ing] or remaining] unlawfully in a building or upon real property . . . where the building is used as a public housing project in violation of conspicuously posted rules or regulations governing entry and use thereof.” (Penal Law § 140.10 [e].) Thus, for an information *321 charging a violation of this subdivision to be sufficient, the statute sets forth four elements that must be supported by non-hearsay, factual allegations of an evidentiary character: (1) that the defendant was inside a building or on real property that was used as a public housing project; (2) that signs listing the rules governing entry were conspicuously posted; (3) that the defendant unlawfully entered or remained inside the building; and (4) that the defendant was aware (see Penal Law § 15.05 [2]) that he was not permitted to be inside the building. The defendant claims that the information fails to allege a prima facie case with respect to the second and third of these elements.
Furthermore, “[a] person is guilty of trespass when he knowingly enters or remains unlawfully in or upon premises.” (Penal Law § 140.05.) The defendant claims, as he does with respect to the third degree criminal trespass count, that the information does not allege facts supporting the element of the trespass statute that requires that the defendant’s presence in the building was unlawful.
A person’s presence inside a building is unlawful when he or she “is not licensed or privileged” to be inside that building. (Penal Law § 140.00 [5].) Additionally, when an area is “open to the public,” anyone inside that area, regardless of his or her intent, is considered to be licensed and privileged to remain therein, “unless he [or she] defies a lawful order not to enter or remain, personally communicated to him [or her] by the owner of such premises or other authorized person.” (Id.) Where a building is only partially open to the public, however, the presumptive license and privilege of the public to enter and to remain inside the building does not extend to those areas that are not open to the public. (Id.)
The defendant’s claim that the facts alleged in the information do not establish that his presence in the building was unlawful is premised on two contentions. The defendant first asserts that the allegations that he had admitted that he was not a tenant in the building; that he had been visiting a friend; and that he was unable to provide the apartment number where that friend resided are, as a matter of law, insufficient to establish that the defendant was not an invited guest of a building tenant. Secondly, the defendant argues that the area of the building where he was allegedly trespassing was open to the public — rendering his presence therein permissible as a matter of law.
In support of his first contention, the defendant cites several decisions of the New York City Criminal Court, each holding *322 that the failure of a defendant to provide the name or apartment number of a tenant whom he or she was visiting does not, by itself, establish that the defendant was not lawfully inside the lobby of a building. (See People v Spann, 8 Misc 3d 654 [Crim Ct, NY County 2005, Ferrara, J.] [allegations of unlawful presence are insufficient where defendant was observed leaving a private apartment unit]; People v Samuel Payton, Crim Ct, NY County, undated, Ross, J., docket No. 2000NY077415 [illegality of nonresident’s presence in lobby of apartment building can only be established where a proffered excuse is found to be false]; People v Charles Lee, NYLJ, Sept. 20, 1999, at 31, col 5 [Crim Ct, Bronx County, Raciti, J.] [defendant’s “innocuous answers” or “justifiable refusal” to give any information cannot, without more, support a reasonable suspicion that a trespass had occurred].)
In response, the People cite a decision of the Appellate Term for the First Judicial Department and a recent Criminal Court case, both of which, they believe, stand for the proposition that the defendant’s inability to provide the name or apartment number of the building tenant whom that defendant is visiting sufficiently establishes the absence of license or privilege to remain in the lobby of that building. (See People v Quinones, 2002 NY Slip Op 50091[U] [App Term, 1st Dept, Mar. 5, 2002], lv denied 98 NY2d 680 [2002, Graffeo, J.] [inability on part of the defendant to identify the name or apartment number of “friend” whom he was visiting sufficient to establish trespass]; People v Taveras, 17 Misc 3d 1119[A], 2007 NY Slip Op 52067[U] [Crim Ct, NY County 2007, Koenderman, J] [same].)
The defendant counters that this court should not follow Quinones and Taveras because these cases are inconsistent with the Appellate Division’s holdings in Matter of Daniel B. (2 AD3d 440, 441 [2d Dept 2003] [“it was not (the defendant’s) obligation” to explain his presence in the building — the burden of proving that element was on the presentment agency]) and Matter of James C. (23 AD3d 262 [1st Dept 2005], citing Daniel B.). Moreover, the defendant claims that the lower-court decisions do not account for the defendant’s rights against self-incrimination and to remain silent in the face of police questioning. The defendant argues that, if this court were to conclude that his unlawful presence can be established by the allegation that he had declined to answer the officer’s question as to the identity of his friend who resided in the building, the court would be improperly attaching criminal liability to the defendant’s exercise of his constitutional rights.
*323 This court first notes that it is beyond dispute that the defendant has a right not to answer questions posed to him by law enforcement personnel (see US Const Amend V) and that the invocation of that right may not give rise to criminal consequences (see Brown v Mississippi, 297 US 278, 286 [1936]). It is equally clear to this court that no essential element of a prima facie case can be established, at the pleading stage, by an allegation that the defendant declined to respond to a police inquiry.
Accordingly, this court now turns to the issue of whether, disregarding the allegation that the defendant did not specify his friend’s apartment number, the remaining facts, as alleged in the information, are sufficient to establish that the defendant was unlawfully inside the building. In doing so, it is necessary to consider what must be pleaded in order to establish this element. The defendant contends that both Daniel B. and James C. require the People to allege facts that conclusively establish that the defendant was without license or privilege to remain inside the building. More recently, however, the Court of Appeals decided People v Davis (13 NY3d 17 [2009]), where the pleading requirements for criminal offenses were more closely analyzed.
On December 15, 2005, Wayne Davis was issued a summons requiring his appearance in court, where he was to be charged with remaining inside a New York City park after the park’s posted closing time, in violation of New York City Department of Parks and Recreation (parks department) rules. (Id. at 20-21. )[2] Davis was subsequently tried and convicted of violating the parks department rules — a class B misdemeanor. (Id. at 21-22. ) Davis appealed, claiming, inter alia, that the information by which he was charged was insufficient, in that it did not allege that he was not ordered to remain inside the park by a police officer or parks department employee — a prospect that would render Davis’s presence inside the park after closing time lawful. (Id. at 31.)
In rejecting Davis’s claim, the Court reviewed the distinction between an exception and a proviso. The decision of which of these labels to assign to a particular statutory element is critical to facial sufficiency analysis, since the People must plead *324 factual allegations to rebut an exception, while the defendant must affirmatively raise a proviso as a defense at trial. The Court held that “[t]he main goal of the interpretive rules governing exceptions and provisos is to discover the intention of the enacting body.” (Id.) With respect to the offense of remaining in a park after the posted closing time, the Court found that the parks department intended that the statutory language that permitted individuals to remain inside a park upon instructions from a police officer or parks department employee was a proviso, which must be raised and proved by the defendant at trial. (Id. at 32.) The Court reasoned that Davis was uniquely positioned to present evidence in support of any claim that he had been specifically authorized to remain inside the park because he would have peculiar knowledge as to the identity of the officer or employee who had permitted him to do so. (Id. at 31-32.) To hold otherwise, the Court ruled, “would require [the People] to go to ‘intolerable lengths,’ including innumerable interviews of officers and employees in the area during the date in question . . . [and] would merely give rise to ‘technicalitie[s that] could be used belatedly to stifle an otherwise viable prosecution.’ ” (Id. at 32 [citation omitted].)
With respect to criminal trespass in the third degree as alleged in the instant matter, the Legislature clearly intended to exclude from the statutory proscription those individuals who are “licensed or privileged” to remain inside the Housing Authority building (Penal Law § 140.00 [5]) — a broad class of people with permission deriving from many possible sources. That the Legislature chose to include such an exclusion in the statute, however, does not necessarily impose upon the People the burden of alleging facts to negate every possibility that the defendant belongs to one of the subgroups of that excluded class. (See generally People v Davis, supra.) Put another way, Davis requires this court to analyze the legislative intent behind the statute in order to determine which sources of license or privilege must be negated by the People, and which must be raised by the defendant as a defense at trial.
Engaging in this analysis, it is clear to this court that the People must plead some facts in order to establish that the defendant was not licensed or privileged to be inside the building. A police officer who encounters an individual loitering in the lobby of a Housing Authority building can readily determine whether that particular individual is a tenant of the building. *325 This court can conceive of many ways that a person’s nonresidence in a building can be established, including: by allegations that the police officer, as an agent of the city, reviewed the roll of tenants residing in the building and that the defendant’s name was not listed thereon; by allegations that the defendant conducted himself or herself in a manner inconsistent with someone who is lawfully present in the building; or by allegations that the defendant admitted that he or she did not reside in the building. Thus, to sustain a trespass charge, the People must, at a minimum, allege facts tending to show that the defendant did not reside in the building.
The possibility that a nontenant found inside the lobby of a Housing Authority building was an invited guest of one of the tenants is, however, not so easily ascertainable by law enforcement personnel. In order for the People to adequately allege facts that would establish that the defendant was not an invited guest inside the building, the police officer who observed the defendant would be forced to question each and every resident of that building in order to determine that the defendant had, in fact, not been invited into the building. This, in turn, would require the police officer to either walk with the defendant through the hallways of the building while questioning each tenant; or to photograph the defendant, release him or her, question every tenant, and then locate and arrest the defendant upon finding that he or she was not an invited guest. This court notes that the number of tenants residing in any particular housing development in New York City regularly numbers in the thousands.[3] Assuming, arguendo, that the People would be required to establish that the defendant was not an invited guest of any of the tenants, the District Attorney would then need to plead sufficient factual allegations to support this element. Thus, after interviewing all of the tenants in a building, a process that may take several days to complete, the People would be required to allege, name by name, that each of the tenants did not invite the defendant into the building. This, in turn, would require the People to obtain a supporting deposition from each of the tenants confirming that the tenant did not invite the defendant into the building.
The onerous investigative and pleading requirements outlined above are inconsistent with “common sense and reasonable *326 pleading” (id. at 31). In fact, much like the knowledge that the defendant in Davis was authorized to ignore the posted park rules, information concerning whether the instant defendant was an invited guest of one of the building’s tenants was peculiarly within the defendant’s knowledge. Furthermore, obligating the People to allege and to prove that the defendant had not been an invited guest of one of the building’s tenants would require an expansive canvas, similar to the investigation deemed “intolerable” in Davis.
Accordingly, this court finds that the State Legislature never intended to mandate such an overly burdensome procedure on the part of law enforcement. A contrary finding would, as a practical matter, render the statute unenforceable, except under circumstances where a defendant admits that he or she is not an invited guest. It would defy logic to believe that the Legislature would intentionally enact a law that is enforceable only when a defendant waives his or her constitutional right to remain silent.
This court is not indifferent to concerns that this ruling may be read to permit the police to arrest any nontenant who is present in the lobby of a Housing Authority building, even if that individual is, in fact, lawfully present in the building. This court does not believe that this holding gives license to the police department to arrest any nontenant found in the lobby of a Housing Authority building without fully investigating any colorable claim that the individual was legally present. Such an investigation would serve the People’s interests, as it may yield evidence without which the District Attorney would be unable to refute such a claim when it is raised by the defendant at trial.
This court, therefore, concludes, in accordance with the holding in Davis and with the notions of common sense and reasonable pleading, that the People are not required to allege facts negating the possibility that the defendant had been an invited guest of one of the Housing Authority’s tenants. Rather, the existence of such an invitation can be raised as a defense at trial and must be proved by the defendant. To the extent that Daniel B. and James C. have held to the contrary, this court believes that the Court of Appeals holding in Davis overruled those holdings. Thus, for pleading purposes, the allegation that the defendant admitted that he did not reside in the building is suf *327 ficient to support the charges of criminal trespass in the third degree and trespass.[4]
With respect to the defendant’s claim that the lobby where he was allegedly found was open to the public, the defendant argues that, absent some form of physical barrier enclosing the lobby, the defendant was presumptively licensed to enter and to remain therein. The defendant cites several cases in support of this assertion. (See People v Sanchez, 209 AD2d 265 [1st Dept 1994] [defendant legally inside a vestibule where it was unclear whether posted signs prohibiting trespass applied to vestibule or lobby]; People v Maisonet, 304 AD2d 674 [2d Dept 2003] [specifying that “no trespassing” signs would have rendered an area closed to the public]; People v Powell, 54 NY2d 524 [1981] [defining “public place” in the context of firearm possession to include places where one would have a right to privacy as one would have in his or her home]; People v Ennis, 30 NY2d 535 [1972] [finding a basement presumptively open to the public absent any information regarding the “character” of the basement]; People v Beltrand, 63 Misc 2d 1041, 1048 [Crim Ct, NY County 1970], affd 67 Misc 2d 324 [App Term, 1st Dept 1971] [no criminal trespass where there is no claim that an order to leave was personally communicated to the defendant]; People v Spont, Crim Ct, NY County, Apr. 12, 2005, Simpson, J., docket No. 2005NY004503 [accusatory instrument insufficient absent an allegation that “No Trespass” signs were conspicuously posted]; People v Felix, Crim Ct, NY County, Mar. 24, 1999, Feinman, J., docket No. 98N118370 [allegation that “No Trespassing” signs were posted is insufficient to sustain a conviction for second degree criminal trespass]; People v Acosta, Crim Ct, NY County, May 3, 2000, Coin, J., docket No. *328 2000NY007833 [allegations of a physical barrier are necessary to sustain a charge of second degree criminal trespass]; People v Colon, Crim Ct, NY County, Mar. 16, 2004, Clott, J., docket No. 2003NY087440 [allegation of “No Trespass” sign insufficient to establish a prima facie case for second degree trespass]; People v Payton, NYLJ, Feb. 25, 1998, at 30, col 2 [Billings, J.] [clearly posted “No Trespassing” signs can suffice as a clearly communicated lawful order not to remain in an otherwise presumptively public area].)
Interestingly, none of the cases cited by the defendant actually support his position. There is certainly disagreement among the various courts as to whether a conspicuously posted “no trespassing” sign is sufficient to render private otherwise publicly-accessible premises for purposes of criminal trespass in the second degree. Nonetheless, even those courts that have held such an allegation insufficient have limited their rulings to cases where criminal trespass in the second degree is charged. (See e.g. People v Felix, supra; People v Colon, supra.)
In the context of criminal trespass in the third degree, as is charged in the instant matter, this court believes that the legislative history and the plain text of the statute support the conclusion that such signs afforded sufficient notice to the defendant that the lobby where he was found was not open to the public. A review of the memorandum in support of the legislation enacting subdivision (e) of Penal Law § 140.10 reveals that among the reasons justifying its enactment was that “there is a loop hole in the law that does not allow housing police to issue trespassing summonses to persons on the premises of a public housing project . . . because the building is ‘public property.’ ” (Sponsor’s Mem, Bill Jacket, L 1992, ch 434, at 8.)
In light of the fact that the enactment of subdivision (e) was intended to cure a perceived shortcoming in the law as it was written at that time, this court believes that the provision requiring conspicuously posted “no trespassing” signs in Housing Authority buildings was intended to remove such areas from the realm of publicly accessible premises for purposes of that subdivision.
As such, this court — giving effect to the legislative intent behind the enactment of the statute — finds that the allegation that “no trespassing” signs were posted in the lobby of a Housing Authority building, beyond the vestibule, is sufficient to establish, for pleading purposes, that the lobby was not open to the public.
*329 The defendant’s remaining claim with respect to the sufficiency of the trespass counts is that the information does not allege that the sign prohibiting loitering and trespassing in the lobby, stairs, hallway, and roof of the building was conspicuously posted. Absence of such an allegation would render the information jurisdictionally defective. However, when reviewing the sufficiency of allegations, the court is required to consider both the accusatory instrument and any supporting depositions. (See CPL 100.40 [1] [c].) In this case, the supporting deposition states, in pertinent part, “2. POSTED SIGNS: THIS LOCATION IS BEYOND A CONSPICUOUSLY POSTED SIGN WHICH READS: . . . Loitering and Trespassing in Lobby, Roof, Hallway and Stairs is not permitted. Violators are subject to arrest and prosecution by the Police Dept. (NYCHA)” (emphasis added). When reading the information together with the supporting deposition, there are sufficient allegations that the required sign was conspicuously posted.
Accordingly, the defendant’s motion to dismiss the counts of criminal trespass in the third degree and trespass must be denied.

. The supporting deposition alleges that the offense occurred at 507 Columbia Street, in Kings County. This court takes judicial notice that 507 Columbia Street is located at the northeast corner of Lorraine Street and Columbia Street.

. The specific ordinance at issue in Davis provides: “No person shall fail to comply with or obey any instruction, direction, regulation, warning, or prohibition, written or printed, displayed or appearing on any park sign, except such sign may be disregarded upon order by a Police Officer or designated Department employee.” (56 RCNY 1-03 [c] [2].)

. The Red Hook East Housing Development, where the offenses charged in the instant information are alleged to have occurred, houses over 3,000 tenants in 16 buildings — averaging approximately 190 tenants per building.

. This court’s holding is limited to the issue of the facial sufficiency of the allegations supporting the trespass counts. The issue of whether the police had probable cause to approach the defendant and question him regarding his residency is not before the court at this juncture. Nonetheless, it is clear that any police questioning of an individual found in the lobby of a Housing Authority building must be consistent with the Fourth Amendment protections against unreasonable searches and seizures. (See People v Almonte, 30 Misc 3d 1234[A], 2011 NY Slip Op 50356[U] [Sup Ct, Bronx County 2011, Livote, J.] [He Bour level one stop to request identification from a defendant who was seen exiting a private “trespass affidavit” apartment building was illegal where the defendant’s conduct prior to the police action was innocuous]; People v Ventura, 30 Misc 3d 587, 591 [Sup Ct, NY County 2010, Torres, J.] [“Officers conducting vertical patrols (of Housing Authority buildings) are not permitted to select individuals for questioning based on presence alone(, absent) evidence of prior criminality in the building”].)