OPINION OF THE COURT
Louis L. Nock, J.
The defendant moves, pursuant to CPL 170.30 (1) (a) and 170.35 (1) (c), to dismiss the information by challenging the constitutionality of the sole count in the information—Penal Law § 265.01 (1), criminal possession of a weapon in the fourth degree—to the extent that it criminalizes the possession of gravity knives, in the aftermath of the United States Supreme Court’s opinion in Caetano v Massachusetts (577 US —, 136 S Ct 1027 [2016]). For the reasons set forth herein, the motion is denied.
Procedural Background
Defendant was arraigned January 28, 2016, upon an information charging him with a sole count of Penal Law § 265.01 (1), criminal possession of a weapon in the fourth degree, for possession of a gravity knife.
Defendant initially served his motion to dismiss on March 30, 2016. By decision and order dated June 16, 2016, this court denied the motion without prejudice, for defendant’s failure to satisfy an essential prerequisite to substantive disposition of the motion—service on the Office of the Attorney General of the State of New York, as mandated by Executive Law § 71 (see People v Sosa-Lopez, 52 Misc 3d 1203[A], 2016 NY Slip Op 50970[U] [Crim Ct, NY County 2016]). On June 22, 2016, defendant filed an amended motion, which included service on the Attorney General. On September 1, 2016, the Attorney General’s Office reported that it would not intervene in this matter, paving the way for this court’s substantive disposition of the instant motion (see Executive Law § 71).
Discussion
The Sole Issue Now Legitimately before the Court: Threshold Constitutionality of New York’s Present Gravity Knife Ban
The U.S. Supreme Court’s decision in Caetano is, practically speaking, a sequel to its decision in District of Columbia v Heller (554 US 570 [2008]). Heller affirmed a District of Columbia Circuit Court determination to invalidate, on Second Amendment grounds, a D.C. law banning all possession of handguns, including those kept in one’s home, and requiring *547 other types of home-kept firearms to be maintained in a nonfunctional state. In Caetano, the U.S. Supreme Court expanded its holding in Heller to include all types of implements that could be considered bearable arms—not just firearms—including, in the context of that case, stun guns.[1] In the case at bar, defense counsel posits that Caetano’s expansion of the Heller holding to stun guns mandates this court’s invalidation, on Second Amendment grounds, of New York’s prohibition against gravity knives.
Any analysis by any court of any challenge to any legislative enactment must begin with a recognition of the strong presumption of constitutionality accorded all legislative enactments. Penal Law § 265.01 (1), like all other legislative enactments, is “supported by a presumption of validity so strong as to demand of those who attack them a demonstration of invalidity beyond a reasonable doubt, and the courts strike them down only as a last unavoidable result” (Matter of Van Berkel v Power, 16 NY2d 37, 40 [1965]; see also People v Davis, 43 NY2d 17 [1977], cert denied 435 US 998 [1978]). “The substantial burden of proving unconstitutionality beyond a reasonable doubt rests with a statute’s antagonist” (People v Scalza, 76 NY2d 604, 607 [1990]; see also People v Stuart, 100 NY2d 412, 422 [2003] [“legislative enactments carry a strong presumption of constitutionality”]).
In addition to the aforesaid presumption of constitutionality accorded all legislative enactments, generally: particular enactments that were fundamentally intended to protect public safety, in the form of a specific weapon prohibition, are subject to yet another factor weighing against a declaration of constitutional invalidity; to wit, the U.S. Supreme Court’s express acknowledgment—even in Heller—that the right to bear arms is subject to reasonable regulation pursuant to a state’s police power (see Heller at 620-622; see also Bach v Pataki, 408 F3d 75 [2d Cir 2005], cert denied 546 US 1174 [2006]). New York’s prohibition against gravity knives appears to have been intended to be precisely such an exercise of reasonable regulation—at the time of its enactment in 1958. The New York State Legislature in 1958 did not prohibit all knives; but *548 rather, the “gravity knife,” narrowly defined to refer to a particular type of bladed implement that, at that time, in 1958, was found by the legislature to be nearly exclusively used as a weapon of choice of criminals; a practical replacement by criminals for the previously outlawed “switchblade knife.” (See Bill Jacket, L 1958, ch 107.) As stated within the legislative history behind the enactment:
“The gravity knife is one which is released from the handle or sheath thereof by gravity or by the application of centrifugal force. When released, it is locked in place by means of a button, spring, lever or other device[2]
“Under the present statutes covering dangerous and unlawful weapons, the switchblade knife is included therein while there is silence as to the gravity knife. There can be no doubt that the gravity knife is as much a hazard to the safety of the general public as the switchblade knife. Since it has been made unlawful to have and possess a switchblade knife, the gravity knife has been most attractive and useful to those engaged in criminal activity.” (Police Department Report on State Legislation, Bill Jacket, L 1958, ch 107 at 15.)
Thus, even mindful of Caetano: given the foregoing legislative intent, as applied to the cultural circumstances prevalent at the time of the law’s enactment in 1958, this court is constrained to conclude that the current New York statute prohibiting the possession of gravity knives, narrowly tailored as such,[3] was designed as a valid and constitutionally permissible exercise of our state’s police power and, thus, not viola- *549 tive of the Second Amendment. Given that unavoidable conclusion, nothing has been submitted to this court sufficient to overcome the strong presumption of constitutionality, which cannot be overcome in the absence of a demonstration of unconstitutionality “beyond a reasonable doubt” (see Van Berkel', Davis; Scalza; Stuart).
Consequently, the court is constrained by applicable law to deny defendant’s motion to dismiss the information on asserted constitutional grounds.
The Future of New York’s Present Gravity Knife Ban is Presently in the Hands of the Legislative and Executive Branches
The “Court’s role is to interpret a statute. It is not to rewrite it.” (Reynoso v Aviles, 87 F Supp 3d 549, 556 [SD NY 2015].) That role is reserved to the legislature, for ultimate approval by the executive. Our state legislature recently passed a bill (2015 NY Senate-Assembly Bill S06483, A09042)[4]—awaiting possible signature by the Governor—which would change the definition of gravity knives to read:
“ ‘Gravity knife’ does not include a knife that has a spring, detent, or other mechanism, including but not limited to resistance to opening designed to create a bias toward closure and that requires exertion applied to the blade by hand, wrist, or arm to overcome the bias toward closure and open the knife.”
The Sponsors’ Memorandum for S06483/A09042 suggests the following justification for the proposed change:
“The current definitions of a switchblade knife and a gravity knife are vague and dependent on an outdated understanding of knives used as weapons and knives that are used as tools. The knives that the Legislature intended to outlaw are very specific and very dangerous, but the current definitions are interpreted broadly and applied to many knives which have valuable uses as tools. Between 2003 and 2013, 60,000 New Yorkers were arrested for *550 possession of these knives, making this one of the most-prosecuted crimes in New York City. The vast majority of those arrested had no criminal intent and believed that the common folding knives they carried were legal. These arrests and prosecutions do not contribute to public safety. Clarifying these definitions will prevent these arrests.” (Sponsor’s Mem, 2015 NY Senate-Assembly Bill S06483, A09042.)
As expounded on hereinabove: at present, the current prohibition on gravity knives (subject to possible change in the event of enactment of the foregoing legislative bill) does not violate threshold constitutional principles, even in the aftermath of Caetano v Massachusetts (577 US —, 136 S Ct 1027 [2016]). That, and that alone, was the sole issue legitimately before this court. Any possible revision of the current law involving gravity knives in New York lies within the exclusive provinces of the legislature and the executive, not the judiciary, which is solely charged to interpret and apply current law as it exists at the time of presentment to the court.
Conclusion
For the reasons stated herein, it is hereby ordered that the defendant’s motion to dismiss the information is denied.

. The Massachusetts statute under examination in Caetano (Mass Gen Laws, ch 140, § 131J) described the stun gun as a “portable device or weapon from which an electrical current, impulse, wave or beam may be directed, which current, impulse, wave or beam is designed to incapacitate temporarily, injure or kill.” No such electrical property can be said of the gravity knife (see Penal Law § 265.00 [5]).

. This language is substantially reflected in the statutory definition of “Gravity knife” (Penal Law § 265.00 [5]), conjunctive to the actual enactment that criminalizes the possession of same (Penal Law § 265.01 [1]). Per said definition, “ ‘[gjravity knife’ means any knife which has a blade which is released from the handle or sheath thereof by the force of gravity or the application of centrifugal force which, when released, is locked in place by means of a button, spring, lever or other device” (Penal Law § 265.00 [5]). A gravity knife is different from a “Switchblade knife” (also prohibited under Penal Law § 265.01 [1], but predating the gravity knife in legislative prohibition), which is defined as “any knife which has a blade which opens automatically by hand pressure applied to a button, spring or other device in the handle of the knife” (Penal Law § 265.00 [4] [emphasis added]).

. Penal Law § 265.01 (1) does not prohibit possession of all knives, all folding knives, or even all folding knives which lock into place; but rather, a subset of knives which contain certain features. Accordingly, unlike in Heller, the subject matter ban on gravity knives does not amount to a prohibition of *549 “an entire class of ‘arms’ ” (Heller at 628). In like fashion, Penal Law § 265.01 does not apply to “ [possession of a . . . gravity knife for use while hunting, trapping or fishing by a person carrying a valid license issued to him pursuant to section 11-0713 of the environmental conservation law” (Penal Law § 265.20 [6]).

. The bill was introduced in the State Assembly by Assembly Members Dan Quart, William Colton, Richard N. Gottfried, Daniel J. O’Donnell, and Michael Miller, and in the State Senate by Senator Diane J. Savino.